```
UNITED STATES OF AMERICA,      )
                               )
             Plaintiff,        )
                               )
     v.                        )
                               )
RANDALL ALAN THAYER,           )    No. CR 07-0812-DLJ
                               )
             Defendant.        )    ORDER
_____)
```

Defendant Randall Alan Thayer (Thayer) was indicted on December 20, 2007, on two counts of transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). He was arrested on January, 14, 2008, and remains in custody. Thayer now seeks an order releasing him from pretrial detention.

**I. BACKGROUND**

A.   Procedural History

On January 17 and February 8, 2008, Thayer appeared before the magistrate judge in detention hearings. The magistrate judge considered the statutory presumption and the evidence presented by the parties, and denied release based upon a finding that if the defendant were released he would pose a danger to the community.

B.   Appeal of a Detention Order

18 U.S.C. § 3145(b) provides in pertinent part that: If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the

order.  This Court reviews the magistrate judge's decision *de novo*. United States v. Koenig, 912 F.2d 1190, 1191 (9th Cir. 1990).  In conducting its review, the district court may hold additional evidentiary hearings, but is not required to do so.  Id.

C.   Grounds for Detention

18 U.S.C. § 3142(c) mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required.  United States v. Motamedi, 767 F.2d 1403, 1405 (9th Cir. 1985).  If the trial court orders that the defendant be released subject to conditions, § 3142(c)(2) specifically prohibits the court from imposing a financial condition that results in the pretrial detention of the defendant.  United States v. Fidler, 419 F.3d 1026, 1028 (9th Cir. 2005).  However, the district court imposing a financial condition of release that results in the de facto detention of the defendant does not violate § 3142(c)(2) if the record shows that the detention is not based solely on the defendant's inability to meet the financial burden, but rather on the district court's determination that the amount of the bond is necessary to reasonably assure the defendant's attendance at trial or the safety of the community.  Id.

18 U.S.C. § 3142(e) provides that the judicial officer shall issue a detention order pending trial if no condition or combination of conditions will reasonably assure (a) the appearance

2

of the person as required and (b) the safety of any other person and the community. The government bears the burden of showing a flight risk by a preponderance of the evidence but must show a danger to the community by clear and convincing evidence. <u>United States v. Gebro</u>, 948 F.2d 1118, 1121 (9th Cir. 1991) (citing <u>Motamedi</u>, 767 F.2d at 1406-07).

Section 3142(e) further provides that there shall be a presumption, subject to rebuttal by the defendant,

> that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense . . . for which a maximum term of imprisonment of 10 years or more is prescribed or an offense involving a minor victim under section . . . 2252(a)(1).

§ 3142(e). The presumption has the effect of shifting the burden of production to the defendant, while the burden of persuasion remains with the government. <u>United States v. Hir</u>, 517 F.3d 1081, 1086 (9th Cir. 2008). However, when the defendant proffers evidence which serves to rebut the presumption, the presumption is not erased, but instead "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." <u>Id.</u> (citing <u>United States v. Dominquez</u>, 783, F.3d 702, 707 (7th Cir. 1986)).

18 U.S.C. § 3142(g) specifies the factors that the court should consider when determining whether there are condition of release that will reasonably assure the defendant's appearance or

3

the community's safety: (1) the nature and seriousness of the offense(s) charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. Gebro, 948 F.2d at 1121.

## II. Discussion

A. Factual Background

Thayer has no criminal record. He has a long and consistent history of employment, most recently at Sun Microsystems. At the time of his arrest he was living with his father, his teenage son, and his girlfriend in a home that he owns in Oakland. While incarcerated at Santa Rita County Jail he has continued to maintain his connection with his family.

On April 25, 2006, an FBI undercover agent entered into an instant message dialogue with an individual using the screen name "Rodrigooak3530." Thayer had admitted that he uses that screen name. During this instant message session, this individual stated that on several occasions he had entered the room of a twelve year old female, who was the daughter of a former girlfriend, while the minor female was sleeping. Rodrigooak3530 stated that he would "pull her panties down to look at her ass" and then he would

4

1  masturbate into a pair of the child's underwear, which he stated he
2  had previously stolen. During contemporaneous email exchanges
3  between Rodrigooak3530 and the FBI agent, Rodrigooak3530 send a
4  video titled "8yoeatcum[2].mpg" which is an approximately 38 second
5  video depicting a young female child orally copulating an adult
6  male. Rodrigooak3530 also sent several images of prepubescent
7  females in different stages of undress and exhibiting their
8  genitalia.

9  On April 3, 2007, following the FBI's execution of a search
10 warrant at Thayer's home, Thayer was interviewed at his residence.
11 During the interview, images of child pornography were shown to
12 Thayer by the agent, and he initialed those images that he
13 recognized "as being ones that he either received or emailed to
14 others over the internet." A collection of child pornography was
15 recovered from Thayer's residence at the time. It includes the
16 following notable content: video of a girl approximately 2 years
17 old being penetrated by an adult male in which her cries of pain
18 are audible; a picture of a young child being anally penetrated by
19 an adult male while the adult holds a gun to the child's head;
20 video of a prepubescent girl being penetrated vaginally and then
21 anally while her legs are tied up in a spread position. Thayer
22 also stated in the interview that he has owned his computer for
23 approximately 2 years and that he is the only one who uses it.

24 On April 3, 2008, Thayer underwent a polygraph examination.
25 The examination results indicated that Thayer's "no" answers were

1 deceptive when given in response to two questions asking whether he
2 had ever had sexual contact with a child.

4 B.  <u>Risk of Flight</u>

5     Despite being informed that he was the target of an
6 investigation, and the nature of the crimes he was alleged to have
7 committed, Thayer did not change his residence or otherwise attempt
8 to evade his arrest which occurred months later on January 14,
9 2008.  In the interim period, he had appeared as requested at the
10 FBI office to cooperate with the investigation.  On the day of his
11 arrest, agents appeared at his home when he was out and, when they
12 called him on his cell phone and asked him to return, he did so and
13 subsequently voluntarily surrendered to them.

14     Thayer has long-standing ties to the community.  He has been
15 cooperative with the FBI agents who have been investigating him.
16 He has appeared for interviews when requested.  He remained
17 available by phone for the several months between the search and
18 seizure of child pornography in his home and his subsequent arrest.
19 This history of cooperation and strong ties to the community
20 combined with the fact that he will post a substantial amount of
21 real estate, which he owns personally, to secure a bond fixed by
22 the Court.

23     In response, as to Thayer's flight risk, the government relies
24 on little more than the presumption itself as evidence that Thayer
25 may not appear in court as required.  Under these circumstances,

the government has not met its burden. To the contrary, the preponderance of the evidence is with Thayer. The Court is satisfied that there exists a set of conditions, as articulated below, that will reasonably assure his appearance in court as required.

C.   Danger to the Community

Thayer proffers the following to rebut that he is a danger to the community: his enduring and strong relationship with his immediate family; his complete lack of any criminal history; the fact that Thayer remained out of custody for months between the recovery of the main body of the incriminating evidence against him and his subsequent arrest, during which time Thayer engaged in no problematic conduct, criminal or otherwise; Thayer's willingness to secure a substantial bond on the equity of his own real estate and to submit to electronic monitoring and strict home confinement conditions, and to prohibition of access to any computer. Production of this evidence serves to rebut the presumption that his release would not reasonably assure the safety of the community.

The burden is on the government to show by clear and convincing evidence that the safety of the community cannot be reasonably assured. The government relies on Thayer's statement in the computer dialogue session that he used a child's underwear in the course of a sexual act, and the polygraph examination in which

7

Thayer's responses, denying any prior sexual contact with a minor, were shown to be deceptive. The government also argues that two pairs of boy's underwear were found in a drawer in his bedroom, that cocaine and methamphetamine were found in his residence, and that his statements to pre-trial services had not been truthful. The government finally bolsters its case with the statutory presumption, relying on the Hir case. 517 F.3d at 1086.

The statement made by Thayer in the computer dialogue session between Thayer and the undercover agent is of questionable evidentiary value. It is part of fantasy conduct and, as Thayer points out, it includes a number of assertions by Thayer that are known to be false. The Court is not inclined to conclude that the one assertion made by Thayer that is said to be relevant to the issue of whether or not he has had direct sexual contact with a minor is factually correct, when so much of the dialogue is not. The Court is also not inclined to conclude that the polygraph examination is of significant weight. The general rule that the unreliability of polygraph evidence makes it inadmissible at trial, may not rule it out in detention hearings, nonetheless it certainly mitigates against giving that evidence significant weight. The Court does not believe that this evidence meets even the lowest burden of proof that Thayer has in fact engaged in sexual conduct with a child at any time in the past.

The illegal drugs that were recovered in the search of his house were subsequently destroyed, by Thayer, but he admitted

personal use of such drugs in the past.  There is no evidence, however, that Thayer has been in possession of any contraband since the destruction of these drugs or that he has any ongoing problem associated with the use of drugs.  As to the circumstances cited by the government: Thayer's son states that the boy's underwear belongs to him, and Thayer did make statements to pre-trial that were incorrect but Thayer's apparently credible explanation regarding the context shows that he did not make them with the intent to mislead the agents.

    As to the Hir case, the legal concepts of that case do apply to this case, but the factual basis of Hir is significantly different.  In Hir, the defendant was charged with providing financial support to terrorists.  Hir, 517 F.3d at 1083.  Hir's brother was a member of a terrorist organization in the northern Philippines, associated with al-Qaeda and with bombings in Indonesia where a large number of persons had been killed.  Id.  In September of 2003 his brother was designated as a "Specially Designated Global Terrorist" with the United States Office of Foreign Assets Control.  Id.  While clearly aware of his brother's violent activities and the fact that he was wanted by the U.S. government, Hir maintained regular email contact with his brother and responded to all of his brother's requests for aid, including wiring over $10,000 in a 13-month period, sending firearms accessories and magazines, as well as bomb-making equipment in the

form of two-way radios that function as trigger mechanisms for Improvised Explosive Devices.  Id.

The offense charged against Thayer is surely of a serious nature, but it should not be considered as being at the highest levels of severity.  The offense charged against Hir, for example, appears to be an offense of a more serious nature.

The seriousness of danger factor listed in § 3142(g) is essentially a measure of the risk that the defendant will commit new criminal conduct.  The government's primary focus is not that Thayer will again commit the crime charged, but rather that there is a risk that Thayer will engage in sexual conduct with a child.  There is no evidence that he has engaged in such conduct in the past.  The Court has already reviewed the circumstances that are proffered in support of an inference that there is a serious risk that he will do so in the future.  The Court finds that the evidence does not support a conclusion that there is a serious risk that he will do so in the future.

The presumption of dangerousness itself, upon which the government relies as evidence of danger, is not sufficient to change this conclusion.  It does not appear to the Court that the government has proved by clear and convincing evidence that there are no conditions that can reasonable assure the safety of the community.  The question, then, is whether there are conditions which would reasonably assure that safety.

D.  Conditions

Under the circumstances, the Court is satisfied that the following combination of conditions will provide reasonable assurance to the Court that Thayer will appear as required and will not pose an undue risk to any person or the community:

1.  Thayer and his father shall execute a personal bond of $82,000, and Thayer will post with the Court his interest in the real property which is his residence, which interest is valued at $82,000, as security for the bond;

2.  Thayer shall report to Pretrial Services as directed;

3.  Thayer shall surrender all travel documents in his possession and shall not apply for any new passports or travel documents;

4.  Thayer shall be confined to his residence except where he has received prior approval from Pretrial Services to leave for purposes of employment, court appearances, meetings with legal counsel, reporting to Pretrial Services, and medical appointments;

5.  Thayer shall submit to electronic monitoring to insure that he remains at his home as required, and make co-payments on the cost of the monitoring as required by pre-trial services;

6.  There shall be no computer device or other means of accessing the internet or electronic mail in Thayer's residence;

7.  Thayer shall refrain from using any computer device or otherwise attempting to access the internet or electronic mail, except after prior approval from pretrial services when such use is

11

for purposes of employment;

8.  Thayer shall have no contact with any minor child without that child's parent or guardian present;

9.  Thayer shall not live at the same residence as any minor child;

10. Thayer shall avoid any place where minor children regularly congregate, including schools, parks, video arcades, and other places of family recreation;

11. Thayer shall participate in psychological counseling as directed by Pretrial Services, and such counseling sessions shall be considered a medical appointment for purposes of gaining permission to leave his residence;

12. Thayer shall not possess any firearms, destructive devices, or other dangerous weapons;

13. Thayer shall not change residence without prior approval from Pretrial Services;

14. Thayer shall refrain from excessive use of alcohol, and shall refrain from any use or unlawful possession of a narcotic drug or of any controlled substances without a legal prescription;

IT IS SO ORDERED.

Dated:   August 25, 2008    _____

                                      D. Lowell Jensen
                                      United States District Judge

12